UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ANGEL FIRE WATER CO., LLC,                           No. 13-10868 ta11

     Debtor.

## MEMORANDUM OPINION

Before the Court are two motions to convert this Chapter 11 case to Chapter 7[1] and a motion to sell estate assets pursuant to § 363(b).[2]  For the reasons set forth below the Court will grant the conversion motions and deny the motion to sell.

### I.    FACTS[3]

The debtor in possession Angel Fire Water Company, LLC commenced this voluntary chapter 11 case on March 15, 2013.   In its petition Debtor stated it was not a small business debtor as defined by § 101(51D).   Debtor's managing members, David and Ramona Bagley, had earlier filed an individual chapter 11 case, no 12-13360-ja11 (since dismissed).   David Bagley ("Bagley") is the sole director of Sangre de Christo Ministries, a Washington nonprofit corporation ("SDCM").

Bagley testified that he invented a unique technology for producing super-oxygenated water.   Debtor began producing and selling bottles of super-oxygenated water in 2001.   Debtor

---

[1] One of the motions seeks dismissal as alternative relief.

[2] Unless otherwise noted, all statutory references are to 11 U.S.C.

[3] The Court finds the following facts based on the final hearing testimony, the exhibits admitted into evidence, and judicial notice of the docket in this case and case no. 12-13360-ja11.   For the propriety of judicial notice, s*ee St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), *affirmed*, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

produced its water at an Angel Fire, New Mexico bottling facility it owned, using Debtor's bottling equipment.   SDCM may own the super-oxygenating technology and license it to Debtor.[4]

Debtor's water-bottling enterprise was not commercially successful.   For this reason, and because its main creditors obtained a judgment against Debtor in 2012, the Bagleys and Debtor filed their respective cases.   After filing for Chapter 11 relief, Debtor's main focus has been on finding a buyer for some or all of its assets.

Debtor found a promising buyer for its bottling plant real estate (the "Property") in July, 2013, and obtained a court order approving the sale.   The transaction never closed.   On September 13, 2013, the Court entered a stipulated order modifying the automatic stay so International Bank, which owned the first mortgage on the Property, could foreclose.   A foreclosure sale was held in May, 2014; the bank was the high bidder.   The state court approved the sale in July, 2014.   Debtor ceased operating thereafter and moved its bottling equipment into storage.   International Bank subsequently sold the Property to Baffco Enterprises, LLC ("Baffco"), an unrelated party.

Debtor stopped filing operating reports after its August, 2014 report (filed October 2, 2014).   The last operating report states that Debtor owes about $9,400 in post-petition taxes and about $30,000 in post-petition attorney fees.   Debtor's cash balance as of August 31, 2014 was $360.   Although Debtor has no income and almost no cash, it continues to incur monthly expenses

---

[4] This finding is based on Bagley's trial testimony, in which he asserted that SDCM owned the technology.   The testimony is contrary to Bagley's bankruptcy schedules, however, which state that he owns the technology personally.   It is an important point, since Bagley at one time valued the technology at nearly $500,000,000.   Further, Debtor's bankruptcy schedules state that Debtor owes Bagley license fees and royalties of $3,450,000.   If SDCM owns the technology, Bagley would not be a fee and royalty creditor.   These are serious and troubling inconsistencies.

-2-

for, inter alia, equipment storage, attorney fees, and U.S. Trustee fees.   Debtor is delinquent in paying quarterly fees to the U.S. Trustee's office.[5]

With its motion to sell, Debtor seeks Court authority to transfer estate assets to Baffco in exchange for $40,000.   The asset purchase agreement attached to the motion ("APA") requires Debtor to transfer all of its assets "used or held for use" in Debtor's business.   The APA definition of "Assets" includes all Debtor's equipment, supplies, records, intangible property, and water rights.

Testifying in support of the motion, Bagley stated that Debtor had no intention of selling all its assets to Baffco, whatever the APA might say.   Bagley testified that Debtor would not transfer to Baffco any trademarks, trade names, or technology licensing rights; any patented equipment; any water tanks allegedly owned by SDCM;[6] or any water rights Debtor might own.

Because of Bagley's trial testimony, Debtor withdrew the motion to sell and substituted a request for Court approval of an offer to accept $40,000 in exchange for a short, specified list of equipment.   Clearly, Baffco has not agreed to the modified sale proposal, and the Court does not know if Baffco would agree.

Bagley testified that the value of the equipment he wants to offer Baffco is less than or equal to $40,000.   This testimony was not contradicted.   However, Bagley also admitted that he has never retained a broker for the equipment or otherwise marketed the equipment to anyone other than Baffco.   No expert testimony was provided about the equipment's value.

---

[5] The Bagleys admitted in their response to the U.S. Trustee's Motion to Convert or Dismiss that Debtor owes past-due fees of $325.

[6] APA lists, as within the definition of "Assets" a 125 gallon holding tank; two 125 gallon holding tanks; three 165 gallon holding tanks; and one 375 gallon holding tank.   Bagley testified that SDCM, rather than Debtor, owns those particular tanks.

-3-

Bagley testified that he is in active negotiations with Baffco to be employed in Baffco's anticipated water-bottling business, and/or to license the super-oxygenating technology to Baffco. No potential economic terms were disclosed, but it was the Court's impression that the potential salary and/or royalties could greatly exceed $40,000.

On Debtor's bankruptcy Schedule A, Debtor lists ownership of 9 acre feet per year ("AFY") of water rights. At trial, however, Bagley testified that three of the AFY are actually owned by SDCM. The remaining 6 AFY apparently were foreclosed by International Bank and sold to Baffco. To the extent Baffco would need SDCM's 3 AFY in the contemplated bottling operating, it seems likely that SDCM would seek to sell or lease the water rights to Baffco.

## II.     THE MOTION TO SELL

### A.     General Law.

The trustee or debtor in possession has the burden to establish sound business reasons for the terms of a proposed § 363 sale. *In re Castre, Inc.,* 312 B.R. 426, 428 (Bankr. D. Colo. 2004). In evaluating the "business soundness" of a proposed sale, the Court should consider the following:  (a) any improper or bad motive; (b) whether the price is fair; (c) whether the negotiations or bidding occurred at arm's length; and (d) if adequate procedures were in place for the sale, including proper exposure to the market and accurate and reasonable notice to all parties in interest. For proper exposure to the market, *see also In re Aegina Investments, LLC,* 2008 WL 1868067, at *1 (Bankr. D.D.C. 2008) (denying trustee's motion to sell real property because it was not exposed to the market through a broker for the length of time sufficient to obtain fair market value). Courts also consider whether a sound business reason exists for the sale and whether the proposed buyer is proceeding in good faith. *In re Medical Software Solutions,* 286 B.R. 431,

-4-

439-40 (Bankr. D. Utah 2002) (citing *In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (D. Del. 1991)).   Another factor to consider is whether the fiduciaries that control the debtor are truly disinterested or would benefit from the sale.   *In re Gulf Coast Oil Corp.,* 404 B.R. 407, 424 (Bankr. S.D. Tex. 2009).   While the trustee's or debtor's judgment usually is entitled to deference, *see, e.g., In re Mannone*, 512 B.R. 148, 150 (Bankr. E.D.N.Y. 2014), if it appears that they or their principals are not disinterested, such deference should be reduced or eliminated.   *In re Gulf Coast Oil Corp.,* 404 B.R. at 424.

The sale terms, including any modifications, must have been subject to adequate notice. *See Gonzalez-Ruiz v. Doral Financial Corp. (In re Gonzales-Ruiz),* 341 B.R. 371 (1st Cir. BAP 2006) (bankruptcy proceedings subject to constitutional due process requirements; "notice and a hearing" concept is flexible; bankruptcy judge has considerable but not unlimited discretion in determining if notice requirement has been met); *In re Marciano,* 2012 WL 4755412 (C.D. Cal. 2012) (citing *Gonzales-Ruiz* for the proposition that bankruptcy judge has considerable discretion to determine if parties received adequate notice); *In re Ritchie Risk-Linked Strategies Trading (Ireland) Ltd.,* 471 B.R. 331, 339 (Bankr. S.D.N.Y. 2012) (notice must convey the required information; whether a creditor received adequate notice is a fact-specific inquiry).

Bankruptcy courts have flexibility to approve § 363(b) sales with terms that vary from those originally proposed by the debtor.   *See In re Torch Offshore, Inc.,* 327 B.R. 254, 256 (E.D. La. 2005) (affirming bankruptcy court approval of a proposed sale, which proposal was modified at the hearing on the sale motion); *In re WK Lang Holdings, LLC,* 2013 WL 6579172, at *9 (Bankr. W.D. Kan. 2013) (court approved a § 363(b) sale as orally amended at the hearing); *In re Eigen, Inc.,* 2010 WL 3350311, at *3 (Bankr. D. Del. 2010) (order approving debtor's § 363(b) sale

-5-

motion amended the terms of sale); *In re Verified Identity Pass, Inc.,* 2010 WL 2822165 (Bankr. S.D.N.Y. 2010) (same); *In re Chrysler LLC,* 2009 WL 1360860 (Bankr. S.D.N.Y. 2009) (same); *In re Spa Chakra,* 2010 WL 779270, at *1 (Bankr. S.D.N.Y. 2010) (court approved sale on terms clarified and modified during approval hearing). *See also In re Fullmer*, 323 B.R. 287 (Bankr. D. Nev. 2005) (debtor can modify a court-approved agreement after approval, if the modification is in the ordinary course of debtor's business).

      B.    <u>Approval of the Sale Motion is Not Warranted in this Case.</u>

The Court concludes that Debtor's request for approval of the significantly modified sale/offer terms should not be approved. There are several reasons for this. First, Bagley clearly is not disinterested in the transaction. He stands to benefit as a potential employee, a potential licensor of the super-oxygenating technology (through SDCM), and/or the seller of other assets Baffco may need (i.e. the water rights and water tanks owned by SDCM).

Second, Debtor's efforts to market the equipment have been informal and incomplete. While Debtor and Bagley devoted a lot of time to selling their real estate and combined business enterprise as a whole, there is no indication Debtor properly exposed the equipment to the market in a commercially reasonable manner.

Third, Debtor's main creditors oppose the modified sale. Creditor opinion is important in this case, since equity is "out of the money." The creditors want an independent trustee to determine the value of Debtor's assets and the best way to liquidate them.

Fourth, there is no evidence that a delay would jeopardize a sale to Baffco. The transaction has been delayed for some time already, and a trustee could move with reasonable dispatch if she thought the $40,000 Baffco deal was in the best interests of the estate.

-6-

Fifth, the Court lacks confidence in Bagley. Bagley's misunderstanding of, and refusal to adhere to, the APA's terms is troubling. More troubling are his revelations at the final hearing that the ownership of key equipment, technology, and water rights are improperly disclosed in his and Debtor's bankruptcy schedules. Such mistakes and inconsistencies destroy trust.

Finally, the Court has no reason to believe Baffco would agree to the significantly modified proposed sale terms. Baffco could easily view the changes as an unacceptable "bait and switch." In general, the Court prefers to entertain motions to approve sales contracts or auction procedures, not debtor offers.

### III. MOTIONS TO CONVERT

A. General Law.

Conversion of a Chapter 11 case to Chapter 7 is governed by § 1112(b).[7] The Court generally is required to dismiss or convert a case under § 1112(b) upon a finding of "cause."

Section 1112(b)(4) contains a nonexclusive list of "causes." *See In re Frieouf,* 938 F.2d 1099, 1102 (10th Cir.1991) (§ 1112(b)(4)'s list of causes is nonexhaustive). Whether "cause" exists to convert a case is a threshold issue. *In re Melendez Concrete, Inc.*, 2009 WL 2997920, at *3 (Bankr. D.N.M. 2009). If cause is established under § 1112(b), the Court must dismiss or convert the case, or appoint a Chapter 11 trustee, unless the court finds "unusual circumstances ... that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(2). "The bankruptcy court has broad discretion ..." in fashioning relief under § 1112(b). *Hall v. Vance*, 887 F.2d 1041 (10th Cir. 1989).

---

[7] *See* § 1112(b)(1) ("on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate ...").

The party requesting dismissal or conversion under § 1112(b) bears the burden of establishing cause by a preponderance of the evidence. *In re ARS Analytical, LLC*, 433 B.R. 848, 861 (Bankr. D.N.M. 2010). In analyzing whether cause for conversion has been established under § 1112(b)(4), the Court applies a materiality standard. *In re Melendez Concrete, Inc.*, 2009 WL 2997920, at *5.

Creditors and the U.S. Trustee assert that cause exists to convert the case under several of the subsections enumerated in section 1112(b)(4). They will be addressed below.

B.      Continuing Loss and No Likelihood of Rehabilitation (§ 1112(b)(4)(A)).

The Debtor has no income, cash, or business operations, but continues to incur monthly expenses such as U.S. Trustee fees, attorney fees, storage fees, and the like. It is clear Debtor has no intent to reorganize. The Court concludes that there is a continuing diminution of Debtor's estate, with no reasonable likelihood of rehabilitation. *See, e.g., In re Landmark Atlantic Hess Farm, LLC*, 448 B.R. 707, 714 (Bankr. D. Md. 2011) (when the debtor has no intention to establish or maintain a business, evidence of continuing loss to the estate is sufficient to establish cause under §1112(b)(4)(A)); *In re Westgate Properties, Ltd.*, 432 B.R. 720, 723 (Bankr. D. Ohio 2010) (same).

C.      Failure to File Operating Reports (§ 1112(b)(4)(F)).

Debtor has not reported on its operations after August 31, 2014. It is unclear whether Debtor intends to resume filing monthly operating reports. Given the facts of this case, Debtor's failure to file monthly operating reports constitutes additional cause to convert the case. *See, e.g., In re Whitten*, 473 B.R. 380, 383 (Bankr. D. Colo. 2012) (flagrant disregard for reporting requirements by itself can constitute cause and whether debtor eventually filed the reports is

-8-

immaterial); *In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011) (operating reports provide necessary information about the progress of reorganization; late filing make evaluation more difficult, and missing filings may render evaluation impossible).

        D.        <u>Failure to Timely Pay Post-Petition Taxes (§ 1112(b)(4)(I))</u>.

Debtor admits it has not paid post-petition taxes that accrued between May, 2013 and August, 2014. Some of the taxes are now 20 months past due. Debtor's failure to pay post-petition taxes for such an extended period is an additional cause for conversion. *See, e.g., In re Keeley and Grabanski Land Partnership*, 460 B.R. 520, 544 (Bankr. D.N.D. 2011) (undisputed evidence that debtor owed post-petition taxes was sufficient cause to dismiss or convert the case).

        E.        <u>Failure to Timely File or Confirm a Plan (§ 1112(b)(4)(J))</u>.

        1.        <u>Plan Filing and Confirmation Deadlines for Small Business Debtors</u>. A "small business debtor" must file a plan of reorganization within 300 days of the petition date, § 1121(e)(2), and must obtain confirmation of the plan within 45 days after the filing date. § 1129(e). Movants argue that Debtor' failure to timely file and confirm a plan is an additional "cause" for conversion under § 1112(b)(4)(J).

        2.        <u>Is Debtor a "Small Business Debtor"?</u> A small business debtor is one that engages in business and has no more than $2,490,925 in noncontingent, liquidated, secured, and unsecured debt, excluding insider debt. § 101(51D). Before enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a debtor could elect whether to proceed as a small business debtor. *In re Roots Rents, Inc.*, 420 B.R. 28, 34–35 (Bankr. D. Idaho 2009); *In re Childs*, 2010 WL 5108457, at *2 (Bankr. D. Utah 2010). After BAPCPA, status as a small business debtor was no longer elective; if a debtor came within the

Code's definition in § 101(51D), it was a small business debtor.  *In re Childs*, 2010 WL 5108754, at *2.

However, a debtor must state in its bankruptcy petition whether it is a small business debtor.  Fed.R.Bankr.P. 1015(a).  The U.S. Trustee's office or a party in interest may object to the debtor's statement within 30 days after the conclusion of the first meeting of creditors.  Fed.R.Bankr.P. 1020(b).  If an objection is timely filed, the court rules on the resulting contested matter, and any change in the debtor's status is retroactive to the petition date.  *Childs,* 2010 WL 5108457, at *5 (citing *Coleman Enterprises, Inc. v. QAI, Inc. (In re Coleman Enterprises, Inc.),* 275 B.R. 533 (8th Cir. BAP 2002) and *In re Barnes,* 310 B.R. 209 (Bankr. D. Colo. 2004)).  If no objection is timely filed, the debtor's statement governs.  Fed.R.Bankr.P. 1020(a) ("the status of the case as a small business case shall be in accordance with the debtor's statement under this subsection, unless and until the court enters an order finding that the debtor's statement is incorrect").

Here, Debtor stated in its bankruptcy petition that it was not a small business debtor.  Debtor never changed that designation, nor did anyone challenge it, timely or otherwise.  Based on the evidence, it appears likely that the statement was incorrect, and that Debtor is in fact a small business debtor.  Since no challenge was ever made, however, the Court does not think it would be appropriate in this case to alter Debtor's statement sua sponte, eight months after the objection deadline expired.  The Court therefore will not treat Debtor as a small business debtor.  It follows that Debtor did not violate any Code deadlines for filing or confirming a plan.  *See, e.g., Childs,* 2010 WL 5108754, at *3 ("If Debtors are not required to proceed as small business debtors in chapter 11, however, no such strict [plan filing and confirmation] deadlines exist").

-10-

3.    Missing the Small Business Debtor Plan Deadlines Would Not be Cause in Any Event.   Furthermore, even if Debtor were to be treated as a small business debtor, its failure to meet the filing and confirmation deadlines would not constitute "cause" under § 1112(b)(4)(J). In *In re Riviera Drilling & Exploration Co.*, 502 B.R. 863, 873 (10th Cir. BAP 2013), the bankruptcy appellate panel held that the §§ 1121(e) and 1129(e) filing and confirmation deadlines applied only to debtor plans, not creditor plans.   *Id.* at 872.   Other courts addressing this issue are in agreement.   *See In re Florida Coastal Airlines, Inc.*, 361 B.R. 286 (Bankr. S.D. Fla. 2007) and *In re Simbaki, LTD*, 2014 WL 6901466 (Bankr. S.D. Tex. 2014).   Because creditors are not bound by such deadlines, and indeed must wait until the deadline expires before filing their own plans, dismissal of a case is not required once debtor's 300-day deadline expires.   To hold otherwise would eviscerate a creditor's right to file a plan.

A debtor's failure timely to file or confirm a plan may be relevant to other grounds for conversion under § 1112(b), but it is not cause under § 1112(b)(4)(J).


F.    Failure to Pay U.S. Trustee Fees (§ 1112(b)(4)(K)).

Finally, Debtor owes $325 in past due U.S. Trustee fees.  This amount would not be material if it were the only grounds for conversion, but should be considered in light of the other causes discussed above.

-11-

## IV.   CONCLUSION

It is in the best interests of creditors to convert this case to Chapter 7 and let a trustee liquidate Debtor's estate.   There is sufficient "cause" to warrant immediate conversion of the case pursuant to § 1112(b)(4).   The Court therefore will deny the motion to sell and grant the motions to convert.   Separate orders will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 20, 2015

Copies to:

William F. Davis
6709 Academy NE, Ste. A
Albuquerque, NM 87109

Christopher M. Gatton
10400 Academy, Ste. 350
Albuquerque, NM 87111

Merrie L. Chappell
P.O. Box 21333
Albuquerque, NM 87154

Alice Nystel Page
P.O. Box 608
Albuquerque, NM 87103

David Bagley
151 Live Oak Trail
Liberty Hill, TX 78642